Okay, the next case is number 15-1041. Tesco Corporation v. National Oilwell Varco, L.P. May it please the Court, thank you. I represent Glenn Ballard and John Luman. This is a very simple case. The issues that are before you are simple, the law is clear, the facts on the record are clear. There was a complete failure to provide my clients with due process. The trial court... Can we start with standing? Sure. Standing, I think this court has taken care of the issue. If you take a look at NITSS v. Permachain, that's the second case, it follows the case of Precision Metals. I'd like to read you a quote that this court stated. This is the one about the patent attorney being found to have committed inequitable conduct. Correct. And this court said there's no standing to hear that patent attorney's appeal on that finding. That's correct. And that's because that was a situation where the patent attorney was not part of the litigation. And what was very important is how this court stated its rule for a non-party to have standing and how it dealt with an attorney. And what this court said is, it says, The exception that allows a non-party to appeal focuses on when a court imposes a sanction on the attorney. When the court is doing that, it is exercising its inherent power to regulate the proceedings before it. This is on page 1319 of the opinion. Once that power to punish is exercised, the matter becomes personal to the sanctioned individual and it is treated as a judgment against him. Okay, so let's deal with the heart of that question, the sanctioned individual. Correct. I mean, there is no doubt that there were things that were said in this record that were unflattering to counsel. But the sanction was not against counsel, was it? That is, with respect, absolutely incorrect. If the court takes a look at the order, and in fact, that's the best thing to do after you take a look at these cases, if the order was 13 pages, it could have... Of course we've read the order. In the court, in the order, I'm sorry, Your Honor. The order could literally, fairly have been titled, Order for Sanctions Against John Lemon and Glenn Ballard. But it wasn't. The court went out of its way not to sanction counsel. Sanction the parties. With respect, that's not what the order did. What the order did is it went through and it said, I have found that these lawyers have misrepresented to me. These lawyers violated the duty of counterintuitive... You're confusing findings with an actual sanction. There's no words that say I'm reprimanding, I'm doing a public reprimand of counsel or I'm imposing costs or fees upon counsel. The only judgment was against the party, correct? Incorrect. Because what the order did is it literally said, it used the word sanctions 13 times. The only people, the only individuals that were said to have actually done something wrong were my clients. That's it. And then what the court did is it said, I'm using my inherent powers. I find that you lied to me. You, Glenn Ballard, you, John Lemon, and here is my sanction. The worst sanction that a trial lawyer can ever have ever, which is I'm going to dismiss your client's case with prejudice. The reason we have these cases... Well, the district court's order really, I mean, of course, it was referencing these two attorneys, but it was also invoking Tesco. I mean, a lot of this order is talking about Tesco attempting to minimize its representation and not being persuaded by Tesco's argument and concerned about Tesco not being forthright with the court. So I understand your point, but I don't read the order. Again, this is a sanction against Tesco. As coming out and going out of its way of saying, lawyer X and lawyer Y lied to me. Judge Chan, with respect, I don't see how you can read the court's August order and not take that away. Because literally, what the court says is, you guys lied to me. Mr. Ballard, you lied to me. You said X, and then these witnesses were deposed, and they said Y. And the court literally ends the statement with... Read the last paragraph where the court says, I think this is totally out of character with these lawyers. This is really serious, but here is my sanction. I'm going to dismiss your client's case. The court doesn't actually say, I'm sanctioning Tesco because Tesco lied to me. You cannot read that opinion and take away anything other than fairly stated. The court is saying, I'm sanctioning you because you lied to me. And my sanction is, I'm tossing your client's case into the trash can. The worst sanction that can ever happen. The reason we don't have the words reprimand or admonishment, and the reason we have those lines of cases that talk about reprimand and admonishment, is because sometimes we have situations where there is no sanction. There is a court that says, I think your conduct was bad. I think you did something wrong. And then it kind of ends. And what courts sometimes look to is something like, I hereby therefore reprimand you, so that we can distinguish that from a situation where the court is just generally waxing on, making statements about, I'm frustrated with counsel. This court went out of its way for one purpose, and that purpose was to exercise its inherent powers to sanction my clients by tossing my client's case. Even if we accept the proposition that you want us to, which is that the sanction against Tesco was effectively a sanction against counsel, we still have an Article III problem with the fact that there has been a settlement. And that, as I understand that, that settlement included mutual releases that included counsel. You have zero Article III problem. Because go back to what this court has said, Go back to that quote that says, Once the power to punish is exercised, the matter becomes personal to the sanctioned individual and is treated as a judgment against counsel. But if the sanction was dismissal, and the question of dismissal can no longer be before us because the parties have settled, and the parties have granted mutual releases that include counsel, then what is left? What judgment is left for us to assess? The judgment, the sanction. The point is... I'm sorry. I want to follow up on Judge O'Malley's question. What do you want us to do at this point? The case is gone. There's been a dismissal, and now there's been a settlement of the case between the two parties. So there are... So what would we do? What would our opinion look like? You have two things you can do. Number one, you can vacate the order. And the cases I would cite you to are... And they're in our brief. Kirkland. It's an 11th Circuit case. In Kirkland, what happened is the court, sua sponte, decided to revoke the lawyer's pro hoc vicege status. Literally, when the case was up before the 11th Circuit, it was settled. It was all done. But the 11th Circuit said the way every other court has said, It doesn't matter. This is an injury to the lawyer's reputation. It has not gone away. It has not dissolved. But in that case, they said that was an individual separate sanction against the counsel. You've just told us that what we're supposed to assume is that counsel was effectively sanctioned by the dismissal. But we can't set aside the dismissal. I agree. But what you can set aside is the order. He just wants to wipe out the court's findings. Absolutely, as part of vacating the order. And what I'm saying is the court has the power to do that. That's Kirkland, and that's Greider, and that's Ibarra. Or, alternatively, the court can send it back. Now, by the way, in Greider, the very issue that you're talking about, Judge Umeli, that is, there's no place to really send it back. What do we do? Because the case is gone. That's exactly what the court said in Greider. In Greider, they said, Since it's gone, we are just going to vacate it. We are going to vacate the order. We are going to vacate the findings. However, the court also has the authority to send it back. And the trial court does have jurisdiction. And if Judge Ellison wants to, he can have a hearing. He can give us the hearing that he deprived us of. He can give us the hearing where we have notice. Did you go back to Judge Ellison after the settlement and ask her to set aside the...  We wanted to get the Court of Appeals to weigh in and to correct the error. And we're entitled to. There's nothing that says that we have to go back before the court. We filed a notice of appeal. And, by the way, there's nothing in the record suggesting that we settled this right. We did not waive any right at all, this personal right, to take care of the injury to our reputation. And there literally is no case, I know of no case, that has ever said that when you have a sanction against a lawyer... And I get it. Tesco, we don't have control over Tesco. Tesco can settle. Tesco can say, see you later. We're out of here. We don't want to have this hanging over our head. Uncle. But that doesn't take away the fact that Judge Ellison aimed directly at us with an inherent power sanction and sanctioned us by dismissing our client's case of prejudice. Why? I mean, the patent attorney in Nisus wasn't sanctioned, right? I mean, this court concluded that patent attorney wasn't sanctioned. Why should we conclude that your clients were sanctioned? Well, okay. So the reason I think Nisus is important is because Nisus explains what actually gives standing. And that's why the quote that this court made, that is, once the power to punish is exercised, it becomes personal. See, that never happened in Nisus. The court never utilized its inherent powers to sanction anybody. This was a third-party, essentially a witness, a third-party lawyer who had been practicing before the PTO, and in the context of the litigation, you know, there were comments that he hadn't done things right. The court didn't use its inherent powers to sanction him. Here, the court used it. The court used its inherent powers to sanction the party, the client, by dismissing the case, which is very much what looks like what happened. And I would respectfully disagree that the court sanctioned my clients. The sanction that it rendered was the worst one that a lawyer can get, which is dismissing his client's case with prejudice. I mean, think about what we're saying. Literally, we would have standing if the court had said, I'll tell you what, Mr. Ballard and Mr. Luman, y'all are liars, and y'all have to pay $100 to the court. We would now be saying, we have standing to come in and argue this? There's not a lawyer in this courtroom who would say that that would be a more preferable situation than for two trial lawyers to have their client's case dismissed because of purportedly lying to them. But you're missing the whole redressability prong of Article III. In other words, we have to be able to do something that would take away the sanction, not just take away the sting of what happened by muzzling the trial judge. That's not within our authority. It is within your authority. It is absolutely within your authority, and I've cited you to three cases to vacate the court's order because my client... None of those cases are from our jurisdiction. What about Williams? Let's look at some other cases. Ibarra is a Fifth Circuit case, but you're right, it's not from the Federal Circuit. But I have three cases, again, from other circuits that say you absolutely can do it, and the court can absolutely send it back. You can send it back to the trial court, and the trial court can conduct a hearing. He can conduct a hearing that he did not do. As I said, there are so many cases that deal with settlement. Crow v. Smith, the Fifth Circuit case, the issues arose after everything had been settled. The point is that nobody has the right, as this court said, it's personal to us when the judgment hits us. It's personal to us. Nobody can settle it. Nobody has the right to settle that away, and it would be a bizarre situation that my clients would be in a better situation if they had received a quote, gee, you're a bad person, give me your hands, I'm going to admonish you, and now I could come here and I would have standing, or you're fined a hundred bucks, but in a situation where my client's case was dismissed with prejudice, a much more impactful injury to my clients were going to say I have no standing. That can't be the rule. Let's cross over. Let's turn, if my colleagues agree, to whatever you need to tell us about the merits. We'll take some extra time. Okay, so very quickly, I think in terms of the merits, it's simple. There was no due process provided to my clients. I would cite the court to, obviously, Roadway v. Piper, which says that when you utilize inherent sanctions, these are serious powers, and that you have to have notice and you have to have a hearing. I would cite the court to two other cases that were not in our brief, Hazier v. Keller, 983, Fed Second, 1061, per curiam, in the Fifth Circuit where they state that that means this is well-settled law. It's also citing Eash v. Riggins, 757, Fed Second, 557. Those cases stand for how unbelievably important it is to have notice and a hearing so that you have the opportunity to defend yourself when you are accused of wrongdoing and when the court is threatening to use inherent powers. Your opponent says that there were eight opportunities for a hearing where your clients said, we don't need a hearing. If the court looks, this is so important, you have to look at the context of when the statements were made. This was all an exceptional case process by which, and here are the orders. If you look at Appendix 31 to 33, February 27, 2014 order, this was all in the context of summary judgments. In other words, the other side was moving for exceptional case sanctions and we were defending it. We filed a motion for summary judgment. There is no question that when you file a motion for summary judgment, if you lose the summary judgment, you get a trial. Every statement that was made in the context of where we said, we don't need a trial, it was all in the context of grant our summary judgment. If there is one thing for the court to read, it would be the court, as I mentioned, that order 31 to 33, the February order, where he said, after the first summary judgment hearing, he said, we're going to have another hearing. We're going to have a hearing on March 10th. The only reason we're going to have this hearing, folks, by the way, the trial is still set for the 17th. The only reason we're having this hearing on the 10th is because I have still continued concerns about Mr. Bierbach's testimony, the testimony about the washers. I want you lawyers to come to me and be prepared to explain to me what would a trial look like, what evidence would actually be put forth in front of me, because that is the issue that I have concern with. When my clients came to that hearing, they said, well, there's no reason to have a trial on that issue because you have all the deposition testimony. If that's the only issue, then either you can rule on the papers. What's so important is the court said, because there was a discussion again about the brochure, the court said, I think we've already dealt in many respects with the August brochure. I know that you feel like additional sanctions are warranted, and he said that to my colleagues, but my focus is really on Mr. Bierbach's testimony, which does concern me. Then he said the last parting words, so my clients at that point are, fine, that's the only issue we're dealing with is the washers, because if there's anything else, we're going to have a trial, and what the court said is, assume that we're not going to have a trial, trial set for a week, assume we're not going to have a trial, but I'll let you know if we're going to. Under those circumstances, it's not just that we didn't receive notice and we didn't receive a trial, it was worse, because we had a separate process that was set up. We did what we were supposed to do. We filed motions for summary judgment. They didn't, and if we lost on summary judgment, the result was supposed to be a trial. At no time were we ever told, inherent power sanctions are coming at you, I'm going to dismiss your client's case with prejudice, it's coming at you, especially in the context of my colleagues saying, we are not pointing the fingers at the lawyers. If the court wants to, on its own, do that, we are not seeking sanctions against them. The case law is clear. We did not get appropriate due process notice, and I'm sorry I went over my time on this. Let me take another moment to ask you, the question that the court was concerned with at that time was the brochure. So the question that the court was concerned with in the most important hearing, the last hearing, which was March 10th, right on the eve of the March 17th trial, was the beer back washers, and indeed, the order that he sent, telling everybody, come to this hearing, come to this hearing on March 10th, so we can figure out what we're going to do with this trial, he had one issue on his plate. And the one issue he had on the plate was, I want you to come to talk about Mr. Beerback's testimony, and what we would actually try if I can't dispose of this on summary judgment. He didn't say, hey, I have a concern about Mr. Carr and Oakerton's testimony, and Mr. Ballard, your representation to the court, come on, let's talk about how we're going to deal with that. I have a concern. I have a concern about that. I'm thinking of using my inherent powers to sanction you and to dismiss your client's case. We didn't have notice, and it was actually the opposite. What would the hearing have entailed beyond just rehashing of all of the trial descriptions and the trial testimony that the court cited in such detail? Well, I can tell you, I would surely hope that if Judge Ellison had said to my clients, and had said to Mr. Ballard, you know what, I'm concerned. I think you lied to me. I think you lied to the court when you told me what Mr. Carr told you all. And I'm thinking of using sanctions and entering sanctions against you. God, I hope and would expect that Mr. Ballard would have called me then, not after the court entered an order. And I can tell you what I would have done. The first thing I would have done is I would have said, you know all of those emails and all of the notes that you've referenced and said, hey, they're available? Let me tell you, we're going to box those up and I'm going to walk into the court after I deal with all of the issues that you have to deal with, right? Because you have to have the self-defense exception to the attorney-client privilege. There were attorney-client privilege issues. So those would have been stuck in front of the judge. Number two, I would have given unbelievably strong consideration to having both Mr. Luman and Mr. Ballard get on the witness stand and testify to the exact discussion in order to rebut the, and let me tell you, when fairly read the testimony of Mr. Carr and Mr. Oakerton, three years after the conversation that they had with the lawyers, this record would have been totally different. And that's one of the problems. When you deprive somebody of notice and you deprive somebody of a hearing, you can't afterwards say, well, where's all the evidence that you would have put in? The evidence is not there because I didn't have notice and I didn't have the hearing. But again, to directly answer the court's question, the notes, emails, and indeed, most likely, my two clients would have been on the witness stand and it would have been a whole different ballgame. Okay, let's hear from the other side. Thank you. Thank you, Mr. Harvey. Okay, Mr. Raley. Yes, ma'am. May it please the court, your honors. I want to first correct the record on something. The issue that was before Judge Ellison was a bench trial on the defendant's counterclaim of exceptional case, principally for litigation misconduct involving the brochure. That was very, very clear, and I'll reference pages 32 and 33 of our brief where we quote from Tesco's counsel, NOV's and OES's claim for exceptional case does not need to be tried. The court has heard all of this over and over again. Tesco has also fully responded to these allegations each time they have been made. This wasn't about their motion for summary judgment. It wasn't about the Washers. It was about our counterclaim. Not just a motion, but a counterclaim, and the court might recall that after summary judgment was initially granted, they noticed an appeal checking the box that all issues were disposed of when our counterclaim for exceptional case, which they had moved to be bifurcated, was still pending, and Judge Ellison had to take the rather unusual step of writing this court and saying, I'm not quite finished with all that's before me. If I could please have it back to finish. So what we were waiting for was that trial, that bench trial. We do not need to have a trial, Tesco's counsel said, on whether these circumstances render the case exceptional. That's a quote. Isn't that still different from whether or not they would like to have a hearing and notice that the court was considering entering sanctions predicated on what is characterized as misrepresentations by counsel? I think that's a very fair question, Your Honor, and I'm sure the court recognizes there's a lot of overlap between litigation misconduct about lying in court about this case dispositive We submit brochure that showed the only novel step of the invention, which the inventor at trial actually identified and agreed with, that they had denied existed, despite we found invoices for thousands of publications of it and it had been dispersed months before the critical date, even though we now know that they held it in their hands on two different occasions and refused to produce it. Then they made false statements in court about it You said they produced the black and white copies at the threshold. That's their claim. Nobody thinks there was no record. It was blurry. There was a whole punch over the tool and nobody at the time thought that was responsive to the discovery request. In response to our motions to compel, they never said, Oh, we produced it already. Here it is. You see. And we found, as the court knows and is now a matter of record, the brochure in an old production from another case where other lawyers represented Tesco. We produced it. We marked it as an exhibit. We used it at trial. And they had it and chose not to produce it. And then they made false representations in court about it, said we've talked to the people who did the rendering, the graphic rendering, and they were prepared to testify unequivocally that that's not it. And as a matter of record now, on page 10 of their brief, they admit that they knew what they said in court was false. Three days later, in the middle of trial, and they never corrected the record. They never came clean. And so all those were part of our counterclaim. Yes, Your Honor. Okay, let's talk about the standing issue. As I see it, there are two different pieces to it. The first is whether or not the sanction of dismissal is effectively a sanction against counsel, regardless of whether the word reprimand was used. The second would be whether, even if that were the case, that the settlement renders us incapable of reaching that question. So as to the first question, do you contend that this isn't really a sanction against counsel, given the harsh language that was in the court's order? Absolutely, Your Honor. Using this court's authority in Nises v. Permachink 2007 case, which is directly on point, that was an inequitable conduct case. And in that case... But the lawyer wasn't involved in that litigation. The lawyer was a witness. It was involved in administrative proceeding. I mean, it's still additional step removed, is it not? But the court's, in the language of the opinion, does not make that limitation, Your Honor. I know they want to make that limitation. But the court's language in the opinion, first it says, we resolve questions like this based on our law and not the regional circuit. And it says, a court's power to punish is not exercised simply because the court, in the course of resolving the issues in the underlying case, criticizes the conduct of a non-party... Well, you know you can't pluck a sentence out of its facts... Sure, yes. ...and transfer it elsewhere. Yes, Your Honor. Do you have something else you want to tell us? Is that your authority for this position? Well, there are two Federal Circuit cases directly on point. Both require a formal reprimand or admonishment at a minimum. It's true that monetary sanctions are not required. But both have language, Your Honor, throughout, and the other case is precision specialty versus United States. They recognize that critical comments by court may adversely affect a reputation, but that does not make it appealable. And it says in the present case, the district court did not exercise its power to sanction Mr. Teschner, that's the attorney. The court's comments about Mr. Teschner were simply subsidiary findings made in support of the court's ultimate findings and conclusion. And then I think the court did something extremely important, and I want to share that with the court, it's a matter of public policy, in Nisus. It said, to allow appeals by attorneys merely because a court criticized them or characterized their conduct in an unfavorable way would invite an appeal by any non-party who feels aggrieved by some critical statement made by a court or an opinion from the bench. It said, nor would it be appropriate to limit such appeals to attorneys, while forbidding others from appealing critical court comments, as such a limitation would smack special treatment for members of the bar and would be difficult to justify as a matter of principle. So I submit that there's an important public policy consideration for this court's ruling on this subject, equal justice under the law. Let me talk about the settlement. Yes. Tell me about the settlement. So did the settlement resolve all attorney's fee questions as well? Yes. Your Honor, it's spot on. The only matter pending at the time of the settlement was our claim for attorney's fees. All matters have been resolved fully. Tesco and Franks and OES and NOV have all joined in this settlement and signed mutual releases. And Mr. Ballard and Mr. Luman, the attorneys who are doing this personal appeal, have also joined in the settlement and signed mutual releases. So there can be no further monetary matters involving any of these parties or the lawyers. And we submit that Your Honor is right in your questions if that's where you were going. We do not believe there is a case or controversy. And what, I mean, this may be obvious here, but what stake do you feel like your client has in this if really all they're requesting is that we have the lower court opinions vacated so that, you know, unkind comments are removed? We believe Judge Ellison was trying to send a message to litigators and to parties in his court that they cannot look a federal judge in the eye and lie. And we don't want to be a part of... They're asking for a hearing in order to provide evidence that they didn't lie. And they tell us, and apparently it seems clear, that that hearing has not been held. There have been so many hearings about this brochure and the evidence about the brochure and the evidence of false statements in court about the brochure. As I just mentioned, on page 10 of their brief you can see that they knew three days after these statements that they were untrue and yet they never ever came clean. That wasn't the question. Yes. We have the, at least what they emphasize, is that we have these depositions taken three years after the fact. One of the deponents says, I don't even remember talking to them. And the other one says whatever he says. And their principal argument here, as I see it, is that they have had no opportunity and have been denied the opportunity to clarify or straighten that out or whatever it is that the purpose is, but at least to diminish the power of what was said against them. We have hearings at length on the very issue Your Honor mentioned, where I personally laid out these depositions. They responded. We were waiting for the trial on... Were there deponents before the court? Yes. The opponents were before the court in video depositions which the court reviewed at the request of Tesco because Tesco didn't want a trial on litigation misconduct and Tesco recommended that the court just review the video depositions to assess the credibility of the witnesses. So how do you resolve the... the issue of the second of these opponents, I forget his name, says I don't even remember talking to? Well, that's further evidence that there was... This was Mr. Orcherton, Your Honor. Yes. They said that they talked to him and he did the brochure graphic. He was one of the ones involved and he will testify unequivocally that the rendering is not the invention. That's the representation they made to court. He said in his deposition, there's no way I did that and if somebody said, I did that, that's false. He didn't say, he said, I don't remember and the petitioners tell us that they have all of the... the notes of the conversation and that there was no opportunity to bring all of this up. If I could share with Your Honor what he said in the deposition. Is that in the record? Yes, Your Honor. A40404-06. This is Mr. Orcherton. Identifying the graphical rendering. Did you participate in this graphical rendering? No. I know it was not me. They represented in court that he did do it and so there's more involved than just remembering a conversation. They stated something in court that was not true and the court's order focused on Mr. Carr's deposition which is A39134-41 and A40388-402 where they went into detail on not only did I not do it but I told them when they first called me it wasn't clear to me. When they sent me a higher resolution image I told them, yes, I see the invention which is completely night from day from what they told the judge and most importantly to us they now admit that when this higher resolution image not a blow up higher resolution image was seen and I'll share with the court that what happened in that interim the first one we found was a computer scan and then later another co-defendant, Frank found a hard copy from one of their old matters and so the hard copy was a clearer resolution. When Mr. Carr saw that resolution he told the appellants I see the invention in it. They never came clean with the court. They continued to take the position the invention wasn't in there. In briefing, in calling paid witnesses, in closing arguments, in post-trial briefings it wasn't for three years before they finally made that admission. Meanwhile, back to your Honor's question about our stake in it our stake in it our client's stake in it is they have spent millions of dollars defending a case that should never have been filed because the patent was invalid because prior art their prior art disclosed the only novel step of the invention. And so the dismissal was just what inevitably would have happened if the truth had come out. So our stake in it is stopping the bleeding on legal fees. And quite frankly, Your Honor the people that have suffered the most in this are the defendants. Because as you might imagine settlements are never you know, 100% of the amount you had to pay. And now they want us to pay more defending their honors which we submit the record shows their worth. I'm almost out of time. I'm happy to answer any of the court's other questions. If not, I'll wrap up. Any questions? Thank you, Mr. Williams. Your Honor, to close Professor Randy Posh in the book The Last Lecture as he was dying of cancer told his students if I could only give you three words they would be tell the truth. And if I could give you three more words they would be all the time. This case is a history of over and over and over and over again false representations to a federal judge. He has tried to reluctantly, sadly as he expressed and sad for all of us craft an order which stands for integrity and which sends a message to everybody that you cannot look this court in the eye and lie. I request that this honorable court give honor to Judge Ellison's order. Rarely do parties or lawyers get caught red-handed like in this case. And if you send a message that they'll get another chance and another chance and do-overs when they've had all of these hearings and all of this briefing and said they didn't want a trial on litigation misconduct and they reference mysterious emails that are not in the record because they didn't produce them even in camera if you send that message it's going to be much easier for people who are not interested in telling the truth to get away with it because some people will always push the boundaries. So we want a message to stand that the rule of law will be followed, Your Honor. I think we have your message. Thank you very much, ma'am. Thank you, Mr. Rayleigh. Mr. Harvey. Do I have time for a brief moment? I want to show something. Thank you. A couple of things that are, again, so important. Every statement where it's professed that we said we don't want a trial that's in the context of saying because you can rule in our favor on summary judgment. That is crystal clear. If the court looks at appendix 40839 that's the order that the court put out, I think it was in January of 2014 where he said, this is how we're going to do it. You all have filed your summary judgments. By the way, my clients, Tesco, my clients' clients were the only ones that filed a summary judgment. They did not, okay? The court gave them more time to respond and then he set for trial if summary judgment wasn't granted, he set trial for March 17th. We never said, hey, if you deny summary judgment, go ahead and sue Esponte. Please feel free to just go ahead and hit us with sanctions. We never said that. Not in a million years. And indeed, if the court looks at 43851, that is our co-counsel during the hearing making clear the obvious that if you don't grant summary judgment, if you think that there's a lingering fact issue, then presumably we'll all get together for a scheduling conference and figure out how to handle this. And the judge agreed, which of course was what happened when we had the March 10th hearing. The only issue being open was the beer box. My client never said we're forfeiting a right to trial if you don't grant a summary judgment. Point two that I failed to hit on the first round. Not only was there no due process, no notice, no hearing, but there was the court erred in its burden of proof. You can't raise a new issue on rebuttal. Okay. Let me talk about, then it's in our brief. If you look at memorandum and order. Which new issue are you concerned with? He's raising an issue that he didn't raise the first time around. Okay. Because you're saying the due process is not before us? Well, this is part of the due process. It's the fact that the court didn't apply the correct burden of proof. Nowhere in his order does he say I'm applying clear and convincing evidence. That's a requirement. Under Fifth Circuit law, you can't sanction, you can't impose inherent power sanctions without basing it on clear and convincing evidence. Let me read the court's last paragraph to address your point, Judge Romali. Was this directed at my clients? The court reaches its decision with great reluctance. The court is entirely confident that the conduct that it finds so troubling is entirely out of character for not Tesco, for the attorneys. However, the conduct, the attorney's conduct is serious and has had significant and costly ramifications to the court and the defendants. For the reasons stated above, the case is dismissed with prejudice and is pursuant to the court's inherent authority. With respect, I don't see how the order can be read without it being, it's clear that this is aimed directly at the lawyers for their alleged misrepresentations. The arguments about all of the other supposed bad acts that my clients did, they're wrong. There are answers to it. That's why the court didn't touch them. The court didn't mention it. And most importantly, on appeal, the court is required to stay within the record. This is Fifth Circuit precedent that binds this court in terms of how to review this. Crowe v. Smith and Ibarra says when you are reviewing the utilization of inherent power sanctions, we have to look exactly at what the court talked about in its order and exactly what it cited to. We don't go outside the order to see if there's something else we can come up with to plug in any holes. In other words, all of the arguments about when my clients didn't, for example, when the witnesses changed their mind later that week, my clients didn't come to the court and say, hey, wait a minute. Our clients have changed their mind. That wasn't before the court. The court didn't make that a basis for the sanctions. And as we pointed out, indeed, the model rules in Texas are real clear. It's a little bit different than the model rules, the ABA model rules. The obligation to correct the record doesn't exist when it's a statement to the tribunal. It does exist if it's actual evidence in the record. And the Fifth Circuit, again, critical, in the Crow v. Smith case, says footnote 40. When you are trying to figure out using inherent powers and whether a lawyer should be sanctioned based upon a misrepresentation and you're thinking about the disciplinary rules, every ambiguity in the disciplinary rules is read in favor of the lawyers. That is Fifth Circuit precedent, footnote 40, Crow v. Smith. But the key is that those issues were not part of the judge's sanction order and they cannot be used. And in fact, if you look at their brief at the end of the day, most of their brief doesn't address what should be addressed. The standard of review, de novo, under N. Ray Moore. The burden of proof, clear and convincing. They don't get that right and 90% of their brief is about other issues that were not part of the order, which the Fifth Circuit has said cannot be considered. With respect to Carr and... Oh, I'm over. It looks like I'm over. And I appreciate the court's time. And we would ask that you vacate the opinion and that... Vacate the order or alternatively remand it to Judge Ellison to conduct a hearing with notice. Your Honor, since he raised the standard of review for the first time... I think it's in the record. I think that we... We can straighten out the standard of review. That's not our biggest problem with this case. Thank you, Your Honor. Thank you both. Thank you all. The case is taken into submission. All rise.